

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| GEORGE BELL McINTYRE, | § | No. 08-12-00099-CR |
| Appellant, | § | Appeal from |
| v. | § | 112th District Court |
| THE STATE OF TEXAS, | § | of Pecos County, Texas |
| Appellee. | § | (TC # P-3166-112-CR) |
|  | § |  |

## **O P I N I O N**

George Bell McIntyre appeals his convictions of indecency with a child by contact (Counts 1 and 2), attempted aggravated sexual assault of a child (Count 3), and aggravated sexual assault of a child (Counts 4, 5, and 6). A jury found Appellant guilty of each count and assessed his punishment at imprisonment for twenty years on Counts 1, 2, and 3, and imprisonment for seventy-five years on Counts 4, 5, and 6. For the reasons that follow, we affirm.

## FACTUAL SUMMARY

Emma Payne moved to Fort Stockton with her father in 1986 or 1987 when she was about seventeen years of age. In 1990, Payne had a daughter, M.P., and she later had a son, N.P. In addition to working as a waitress and bartender at various restaurants and bars, Payne worked at a ranch owned by Appellant's mother and with Appellant in a scrap iron business. Payne had

a romantic relationship with Appellant even though he was several years older and she married Appellant in 1992 when M.P. was two years old. They divorced a few months later, but the couple continued to have a romantic relationship. M.P., who was twenty-one years old at the time of trial, described the relationship between her mother and Appellant as "always on and off, but it was constant, as well." Appellant and Payne lived together in a house in Fort Stockton with Payne's children, M.P. and N.P. Payne and the children later moved out of the house, but she continued to have an on-again-off-again relationship with Appellant. Payne and the children also lived with Appellant on the ranch in a house which both Payne and M.P. described as being "on stilts." When Payne and the children were not living with Appellant, they lived in an apartment in Fort Stockton.

In 1995, Payne married Tommy Raybon. She denied having a romantic relationship with Appellant while she was married to Raybon. Payne admitted she was not a good mother during this time period because she was using drugs and alcohol and working as a stripper. Raybon physically abused Payne during the marriage and they moved numerous times between Fort Stockton and Snyder, Texas in order to avoid CPS investigations. Like her relationship with Appellant, Payne frequently left Raybon only to reunite with him again. During this time period, Payne frequently visited Appellant in Fort Stockton. Payne divorced Raybon in 1997.

M.P. began having emotional and behavioral difficulties when she was six years of age. She had nightmares about a man who was going to kill her. M.P. also engaged in sexual contact with a neighbor's son. When she was seven or eight, M.P. began having anger issues and tried to stab her brother with a butter knife. Payne placed M.P. in River Crest in San Angelo where she

was diagnosed with ADD, ADHD, and post-traumatic stress disorder. Following M.P.'s release from River Crest, she received counseling at the Permian Basin MHMR in Fort Stockton. At a follow-up visit to River Crest, M.P. made allegations that she had been sexually abused by her stepfather. Payne did not want to believe it and M.P. continued to receive counseling. In November of 1999, nine-year-old M.P. made an outcry to her mother that Appellant had molested her. Payne immediately notified CPS and the Sheriff's Department.

Sgt. Tulon Murphy of the Pecos County Sheriff's Department received Payne's report and began an investigation. Murphy transported M.P. to Harmony Home in Odessa for an interview with Eve Flores. A sexual assault examination was also performed by Linda Pinter, who is a certified Sexual Assault Nurse Examiner (SANE), at Odessa Medical Center. When Pinter examined the genitalia, she observed a prominent bump and thickened tissue at the base of the hymen. These abnormalities were consistent with the history of sexual abuse provided to her by M.P. at the beginning of the examination.

There is some evidence in the record and the parties agree that a grand jury indicted Appellant for aggravated sexual assault of a child in December 1999. Payne and her children moved to Indiana in 2000 and the District Attorney dismissed the charges against Appellant in 2001. In 2009, Nick Hanna, a Texas Ranger, was investigating cold cases when he became familiar with the case involving M.P. Hanna interviewed M.P. and her mother in September of 2009 and M.P. stated that she was willing to proceed with the prosecution against Appellant. In 2010, a Pecos County grand jury returned a six count indictment against Appellant. The State dismissed the indictment and a grand jury re-indicted Appellant in 2012 in order to change the

dates on which the offenses were alleged to have been committed. The indictment alleged that the offenses occurred on or about certain dates in 1995 (Counts 1 and 2), 1996 (Counts 3 and 4), 1997 (Count 5), and 1998 (Count 6).

M.P testified in detail about the conduct on which each count was based. She recalled living in the "house on stilts" with her mother, brother, and Appellant. Shortly before her fifth birthday, M.P. and her brother were at the house with Appellant at bedtime while her mother was at work. Appellant called her into his bedroom and told her to take off her gown. He took off his clothes and she made her get into the bed with him. Appellant took M.P.'s hand and made her rub it up and down his penis while telling her it was her duty to do this because her mother was not there. After Appellant ejaculated, he wiped off her hands and sent her back to her bedroom. A few nights later, Appellant called M.P. into his bedroom while her mother was at work. Appellant was watching adult videos on the television and he started using his hands to touch her crotch area and vagina while fondling her chest. During this same incident, Appellant made M.P. touch his penis. M.P. testified that Appellant touched her and made her touch his penis whenever she went out to feed the cattle with him.

M.P. recalled another incident which occurred several months later. She and Appellant had returned from feeding the cattle and he told her that he was going inside to "to do [her] mother" and when she left for work, M.P. was going to take her place. When her mother left for work later than evening, Appellant took her into his bedroom and made her undress. Appellant licked M.P.'s genitals and vagina and then forced her to put his penis in her mouth. After a short time, Appellant removed his penis and covered it with his underwear. He then sent her back to

her bedroom. When asked by the prosecutor how she could recall this specific event, M.P. explained that these incidents stood out in her memory because Appellant had done something new to her.

The next incident she remembered occurred when they were living in Snyder but they were visiting Appellant. M.P. recalled that she was six years of age during this visit. Her mother went to work and Appellant carried her into the bedroom. M.P. protested and said she needed to use the bathroom. He carried her into the bathroom and shut the door. He got down on the floor and told M.P. to urinate and defecate on his chest. M.P. refused and Appellant eventually sent her back to the bedroom. Appellant continued to touch her genitals and make her touch his penis while the family stayed with him.

On one occasion before her seventh birthday, Appellant licked M.P. and penetrated her sexual organ with his tongue. He also attempted to penetrate M.P.'s vagina and anus with his penis but she screamed because it hurt so much and he stopped. M.P. testified that Appellant's penis penetrated the labia and only the tip of it penetrated the vagina. M.P. recalled another incident after she turned seven when Appellant attempted to penetrate her vagina again. M.P. threatened to tell her mother and Appellant grabbed a gun. While pointing the gun at her chest, Appellant told M.P. that he would kill her and her family if she told anyone. He also told her no one would believe her because he was an adult. As a result of his threat to harm her family, M.P. told the people at River Crest that she had been molested by a stepfather but she did not identity Appellant by name. Appellant is the only person who ever touched M.P. in this way when she was a child.

Yvonne Garcia, a Licensed Professional Counselor, examined M.P.'s educational records, the River Crest Hospital records, as well as CPS and MHMR records. In Garcia's opinion, the records supported a diagnosis of post-traumatic stress disorder (PTSD) resulting from a life-threatening event that M.P. experienced personally or that someone close to her experienced. PTSD could emanate from different events such as a natural disaster, terrorism, being a prisoner of terror, and sexual assault. A child typically responds to PTSD with intense fear, horror, shame, guilt, and significant uncertainty regarding how to proceed. One characteristic symptom reflected in the records is that M.P. did not sleep at night. She explained that children with PTSD struggle with sleep because closing their eyes or entering a specific stage of sleep can trigger the memory of the traumatic event. Based on her review of the records, Garcia also found that M.P. had exhibited many sexual abuse indicators. These indicators included not sleeping at night, sexual acting out, and inappropriate anger.

## SUFFICIENCY OF THE EVIDENCE

In his sole issue, Appellant challenges the sufficiency of the evidence supporting his convictions. He argues that the evidence does not support the allegations in the indictment regarding the date on which the offenses occurred. We also understand Appellant's brief to attack M.P.'s credibility.

### Standard of Review

In reviewing the sufficiency of the evidence to determine whether the State proved the elements of the offense beyond a reasonable doubt, we apply the *Jackson v. Virginia* standard. *Brooks v. State*, 323 S.W.3d 893, 895-96 (Tex.Crim.App. 2010), *citing Jackson v. Virginia*, 443

U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Under that standard, a reviewing court must consider all evidence in the light most favorable to the verdict and in doing so determine whether a rational justification exists for the jury's finding of guilt beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 894-95, *citing Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. As the trier of fact, the jury is the sole judge as to the weight and credibility of witness testimony, and therefore, on appeal we must give deference to the jury's determinations. *Brooks*, 323 S.W.3d at 894-95. If the record contains conflicting inferences, we must presume the jury resolved such facts in favor of the verdict and defer to that resolution. *Id.* On appeal, we serve only to ensure the jury reached a rational verdict, and we may not reevaluate the weight and credibility of the evidence produced at trial and in so doing substitute our judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000). In our review, we consider both direct and circumstantial evidence and all reasonable inferences that may be drawn from the evidence. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). The standard of review as to the sufficiency of the evidence is the same for both direct and circumstantial evidence cases. *Id.*; *Arzaga v. State*, 86 S.W.3d 767, 777 (Tex.App.--El Paso 2002, no pet.).

### *The Date the Offense was Committed*

Each count of the indictment alleged that the charged offense occurred "on or about" a certain date. Article 21.02 of the Texas Code of Criminal Procedure sets forth the requisites for an indictment. TEX.CODE CRIM.PROC.ANN. art. 21.02 (West 2009); *Thomas v. State*, 444 S.W.3d 4, 9 (Tex.Crim.App. 2014). Under Article 21.02(6), "[t]he time mentioned must be some date anterior to the presentment of the indictment, and not so remote that the prosecution of the

offense is barred by limitation." TEX.CODE CRIM.PROC.ANN. art. 21.02(6). The Court of Criminal Appeals has held that when a charging instrument alleges the offense occurred "on or about" a certain date, a conviction is not rendered infirm merely because the State proved the offense occurred on a different date "so long as the date on which the offense is proven to have occurred complies with Article 21.02." *Thomas*, 444 S.W.3d at 9; *Sledge v. State*, 953 S.W.2d 253, 255-56 (Tex.Crim.App. 1997). A discrepancy between the date alleged in the charging instrument and the date proven at trial is not a fatal variance. *Thomas*, 444 S.W.3d at 9. When the State uses "on or about" language and proves that the offense was committed on a date different from that alleged in the indictment, but before presentment of the indictment and expiration of the applicable statute of limitations, the offense took place "on or about" the date alleged in the indictment. *Id.*

Count 1 of the indictment alleged that Appellant committed the offense of indecency with a child on or about February 15, 1995 by intentionally or knowingly causing M.P., a child younger than 17 years of age and not his spouse, to engage in sexual contact by causing her to touch Appellant's genitals. There is no statute of limitations for the offense of indecency with a child. *See* TEX.CODE CRIM.PROC.ANN. art. 12.01(1)(E)(West Supp. 2014). M.P., who was born in March of 1990, testified that this conduct occurred prior to her fifth birthday. Thus, the State proved that the offense took place "on or about" the date alleged in the indictment because it occurred before presentment of the indictment.

Count 2 alleged that Appellant committed indecency with a child by sexual contact on February 16, 1995 by touching M.P.'s genitals. M.P. also testified that Appellant took her into

his bedroom a few nights after the conduct alleged in Count 1 and touched her genitals with his hand. This evidence is sufficient to prove that the offense occurred "on or about" February 16, 1995.

Count 3 alleged that Appellant, on March 14, 1996, attempted to commit the offense of aggravated sexual assault of a child by pulling M.P.'s head to his exposed sexual organ. There is no statute of limitations for aggravated sexual assault of a child under Section 22.021(a)(1)(B) of the Penal Code. *See* TEX.CODE CRIM.PROC.ANN. art. 12.01(1)(B); TEX.PENAL CODE ANN. § 22.021(a)(1)(B)(West Supp. 2014). Further, the limitation period for criminal attempt is the same as that of the offense attempted. TEX.CODE CRIM.PROC.ANN. art. 12.03(a)(West 2005). M.P. testified that this incident occurred several months after the offenses described in Counts 1 and 2. The evidence established that Count 3 occurred "on or about" the date alleged in the indictment.

Regarding Count 3, Appellant additionally contends that there is no evidence in the record showing that Appellant committed an attempted aggravated sexual assault of M.P. The complainant testified that when Appellant told her what he was going to make her do, she kept her mouth shut and refused to open it. Appellant grabbed the hair on the back of her head and pulled as hard as he could until she opened her mouth. He put his penis in her mouth for "a few moments" before removing it. Thus, there is evidence in the record showing that Appellant actually committed the offense of aggravated sexual assault of a child. This evidence does not compel a finding that the evidence is insufficient to prove the attempted offense because Section 15.01(c) of the Texas Penal Code provides that it is "no defense to prosecution for criminal

- 9 -

attempt that the offense attempted was actually committed." TEX.PENAL CODE ANN. § 15.01(c) (West 2011).

Count 4 alleged that Appellant committed the offense of aggravated sexual assault of a child on or about March 15, 1996 when he intentionally or knowingly caused the penetration of M.P.'s sexual organ with his tongue and M.P. was younger than 14 years of age. There is no statute of limitations for aggravated sexual assault of a child. *See* TEX.CODE CRIM.PROC.ANN. art. 12.01(1)(B). M.P. testified that Appellant penetrated her vagina with his tongue before her seventh birthday in March 1997. The evidence is sufficient to prove that the offense occurred "on or about" March 15, 1996.

Count 5 alleged that Appellant, on or about April 12, 1997, committed the offense of aggravated sexual assault of a child by intentionally or knowingly causing his sexual organ to penetrate M.P.'s sexual organ when she was younger than 14 years of age. M.P. recalled that this offense occurred shortly after her sister was born. Other evidence showed that M.P.'s sister was born in early 1997. The evidence is sufficient to prove that the offense occurred on or about April 12, 1997.

Finally, Count 6 alleged that Appellant committed aggravated sexual assault of a child on or about March 1, 1998 when he caused his sexual organ to penetrate the anus of M.P. when she was younger than 14 years of age. According to M.P.'s testimony, this offense occurred at the same time as the offense alleged in Count 5. The evidence shows that the offense occurred prior to the presentation of the indictment and there is no statute of limitations for aggravated sexual assault of a child. Consequently, the evidence is sufficient to prove that Count 6 occurred "on or

about" the date alleged in the indictment.

Appellant acknowledges that the State is not bound by the "on or about" date alleged in the indictment, but he argues that M.P.'s testimony regarding when the offenses occurred is contradicted by school records and other evidence. Further, he asserts that there is evidence in the record that M.P. had accused persons other than Appellant of sexual abuse, and she was "constantly lying" and making up "weird stories." These arguments are nothing more than a challenge to the credibility of the complaining witness. It was the jury's task to consider the defenses raised by Appellant, to resolve the conflicts in the evidence, and to evaluate the credibility of all of the witnesses, including M.P. When evaluating the legal sufficiency of the evidence, we are required to view the evidence in the light most favorable to the jury's verdict and we are not permitted to substitute our judgment for that of the jury. We have considered the evidence under the required standard of review and conclude that it is sufficient to permit a rational trier of fact to conclude beyond a reasonable doubt that Appellant committed the offenses alleged in Counts 1 through 6 on or about the dates alleged in the indictment. We overrule Issue One and affirm the judgment of the trial court.

December 19, 2014

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
(Rivera, J., not participating)

(Do Not Publish)

- 11 -